**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **TIFFANY TAYLOR, individually and on behalf of all others similarly situated,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No.:  2:17-CV-0495-VEH** |
| **FRED'S, INC. and FRED'S STORES OF TENNESSEE, INC., et al.,** | ) ) ) ) | |
| **Defendants.** | ) ) ) | |

---

## MEMORANDUM OPINION

## I.    Introduction

Plaintiff Tiffany Taylor ("Ms. Taylor") initiated this purported class action

arising under the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), 15

U.S.C. § 1681c(g), an amendment to the Fair Credit Reporting Act ("FCRA"), 15

U.S.C. §§ 1681-1681x, against Defendants Fred's, Inc. and Fred's Stores of

Tennessee, Inc. (collectively "Fred's") on March 29, 2017. (Doc. 1). On May 24,

2017, Ms. Taylor filed a First Amended Class Action Complaint (the "FAC"). (Doc.

29).

Pending before the Court is Fred's Motion To Dismiss Plaintiff's First

Amended Class Action Complaint (doc. 32) (the "Motion") filed on June 7, 2017.

Fred's brings this Motion pursuant to Rule 12(b)(1) and Rule 12(b)(6). The Court has

reviewed the parties' filings offered in support of and opposition to the Motion.

(Docs. 32-1, 34, 35, 45, 46, 48, 55). For the reasons set out below, the Motion is due

to be granted in part and otherwise termed as moot.

## II.    Standards

### A.    Rule 12(b)(1) Generally

As the Eleventh Circuit has explained the standard on motions to dismiss for

lack of subject matter jurisdiction:

> Attacks on subject matter jurisdiction under FED. R. CIV. P. 12(b)(1) come in two forms. "Facial attacks" on the complaint "require[] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953, 101 S. Ct. 358, 66 L. Ed. 2d 217 (1980) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "Factual attacks," on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*

> These two forms of attack differ substantially. On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion-the court must consider the allegations of the complaint to be true. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S. Ct. 396, 70 L. Ed. 2d 212 (1981). But when the attack is factual,

the trial court may proceed as it never could under 12(b)(6) or FED. R. CIV. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction-its very power to hear the case-there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.* at 412-13 (quoting *Mortensen*, 549 F.2d at 891).

*Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (emphasis added); *see also Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) ("The district court consequently has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.").[1]

Here, the jurisdictional attack is facial. (*See* Doc. 32 at 1 ("[T]hough Plaintiff has filed an amended complaint, Plaintiff continues to fail to plead injury-in-fact as required by Article III of the U.S. Constitution.")). Consequently, the Court has accepted all allegations contained in Ms. Taylor's FAC as true.

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

## B.    General Principles Governing Standing

"The Constitution limits the exercise of the judicial power to cases and controversies." *Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater*, 777 F.2d 598, 604 (11th Cir. 1985). "The Art. III doctrine that requires a litigant to have 'standing' to invoke the power of a federal court is perhaps the most important of these doctrines [that pertain to the case-or-controversy requirement]. 'In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" *Allen v. Wright*, 468 U.S. 737, 750-51 (1984) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014). An individual plaintiff has standing under the Constitution's case-or-controversy limitation in Art. III, § 2, when "(1) [the plaintiff] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

The doctrine of standing encompasses "both constitutional limitations on

federal-court jurisdiction and prudential limitations on its exercise." *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004) (internal quotation marks omitted) (quoting *Warth*, 422 U.S. at 498). "[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal[.]" *Warth*, 422 U.S. at 500. Standing, instead, is based on whether the plaintiff has "'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth*, 422 U.S. at 498-99 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

From a prudential standpoint more particularly, "a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Kowalski*, 543 U.S. at 129 (quoting *Warth*, 422 U.S. at 499). "This rule assumes that the party with the right has the appropriate incentive to challenge (or not challenge) governmental [or private] action and to do so with the necessary zeal and appropriate presentation." *Kowalski*, 543 U.S. at 129 (citing *Warth*, 422 U.S. at 500).

Finally, a plaintiff "bears the burden of showing that he has standing <u>for each type of relief sought</u>." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (emphasis added) (citing *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).

### C.     *Spokeo*'s Examination of the Doctrine of Standing

The jurisdictional portion of Fred's Motion is primarily premised upon the Supreme Court's examination of standing and the reversal of the Ninth Circuit in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), *as revised* (May 24, 2016).[2] Spokeo, a company that "operates a 'people search engine'", was sued in district court under the Fair Credit Reporting Act ("FCRA") when the plaintiff discovered that a search request concerning him contained inaccurate personal information. *Id.* at 1544. Determining that the plaintiff lacked standing, the district court dismissed the case. *Id.* On appeal, the Ninth Circuit reversed and the Supreme Court granted certiorari review of that standing determination. *Id.* at 1544-45, 1546.

Finding the Ninth Circuit's analysis of standing to be "incomplete," the Supreme Court "vacat[ed] the decision below and remand[ed] for the Ninth Circuit to consider *both* aspects of the injury-in-fact requirement." *Id.* at 1545 (emphasis in original). More specifically, "[t]he Ninth Circuit's analysis focused on the second characteristic (particularity), but it overlooked the first (concreteness)." *Id.* The Supreme Court expressed no opinion "as to whether the Ninth Circuit's ultimate conclusion—that Robins adequately alleged an injury in fact—was correct." *Id.* at

---

[2] Fred's also challenges Ms. Taylor's ability to show an imminent injury and traceability.

1550.[3]

As the Supreme Court explained the component of concreteness in *Spokeo*:

> A "concrete" injury must be "*de facto*"; that is, it must actually exist. *See Black's Law Dictionary* 479 (9th ed. 2009). When we have used the adjective "concrete," we have meant to convey the usual meaning of the term—"real," and not "abstract." *Webster's Third New International Dictionary* 472 (1971); *Random House Dictionary of the English Language* 305 (1967). Concreteness, therefore, is quite different from particularization.

> "Concrete" is not, however, necessarily synonymous with "tangible." Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete.

*Id.* at 1548-49 (some citations omitted).[4]

The *Spokeo* Supreme Court further instructed:

> In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles. Because the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally

---

[3] On remand from the Supreme Court, the Ninth Circuit did not retreat from its prior conclusion that the plaintiff's FCRA allegations adequately established an injury-in-fact. *See Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1118 (9th Cir. 2017) ("We are satisfied that Robins has alleged injuries that are sufficiently concrete for the purposes of Article III.").

[4] An easily recognized intangible harm is psychological injury or emotional distress. *See Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 476 (11th Cir. 1999) (discussing intangible emotional harm caused by humiliation and insult in the context of a § 1981 discrimination lawsuit). Tangible harms are injuries that are subject to a more objective measurement such as "financial, property, or physical harms." *Ferrill*, 168 F.3d at 476.

been regarded as providing a basis for a lawsuit in English or American courts. *See Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 775-777, 120 S. Ct. 1858, 146 L. Ed. 2d 836 (2000). In addition, because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important. Thus, we said in *Lujan* that Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." 504 U.S., at 578, 112 S. Ct. 2130. Similarly, Justice Kennedy's concurrence in that case explained that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.*, at 580, 112 S. Ct. 2130 (opinion concurring in part and concurring in judgment).

*Id.* at 1549 (emphasis added).

Finally, in illustrating the meaning of these (and other) principles of concreteness, the Supreme Court provided two examples of conceivable violations of FCRA that would lack the level of concreteness necessary to satisfy Article III's injury-in-fact framework:

On the one hand, Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk. On the other hand, Robins cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

*Id.* at 1550 (emphasis added).

### D.    Rule 12(b)(6)

Fred's alternatively maintains that Ms. Taylor's FAC is subject to dismissal pursuant to Rule 12(b)(6). (Doc. 32 at 1). A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6) ("[A] party may assert the following defenses by motion:  (6) failure to state a claim upon which relief can be granted[.]"). The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (footnote omitted) (quoting Fed. R. Civ. P. 8(a)(2)), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see also* Fed. R. Civ. P. 8(a) (setting forth general pleading requirements for a complaint, including providing "a short and plain statement of the claim showing that the pleader is entitled to relief").

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 555 (quoting *Conley*, 355 U.S. at 47). However, at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[O]nce a claim has been

stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid*." *Iqbal*, 556 U.S. at 680.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## III. Analysis

### A. Ms. Taylor Has Not Shown an Injury-in-Fact.

Fred's raises two issues in its initial brief regarding standing. First, Fred's

maintains that Ms. Taylor's allegations do not show that she has suffered an injury-in-fact. (Doc. 32-1 at 8-21).[5] Second, even assuming Ms. Taylor has suffered a cognizable injury-in-fact, such an injury is not traceable to any alleged violation of the FACTA by Fred's. (Doc. 32-1 at 21-22). With the foregoing standards in mind, the Court turns to an evaluation of whether Ms. Taylor's FACTA allegations establish an injury-in-fact.

### 1. Ms. Taylor's FACTA Allegations and the Purpose of FACTA

Ms. Taylor asserts that, on or about April 2, 2016, she "purchased certain goods from [Fred's] business location in Bessemer, Alabama." (Doc. 29 at 11 ¶ 33). Ms. Taylor paid for her purchases using "her personal VISA debit card" and received a receipt that "displayed the first six digits and the last four digits of [that] debit card." *Id.* "This receipt also displayed [Ms. Taylor's] full name." *Id.*

Subsequently, on or about January 2, 2017, Ms. Taylor bought items "from Fred's business location in Marion, Alabama." (Doc. 29 at 12 ¶ 34). The receipt that she received on this date "displayed the first six digits and the last four digits of her VISA debit card." *Id.*

Ms. Taylor also bought items "from Fred's business location in Pleasant Grove

---

[5] All page references to Doc. 32-1 correspond with the Court's CM/ECF numbering system.

location" on or about March 13, 2017. (Doc. 29 at 12 ¶ 35). The receipt she received on this visit reflected "the expiration date of her [VISA] debit card." *Id.*

Separate from these specific dates, Ms. Taylor alleges that she "made additional prior purchases with the same VISA debit card . . . within the last five years . . . and did not retain the receipts." (Doc. 29 at 12 ¶ 36). Ms. Taylor asserts that "[t]hese lost or discarded electronically-printed receipts . . . likely contain more than the last five digits <u>or</u> the expiration date of her VISA debit card." *Id.* (emphasis added).

Ms. Taylor did not discover Fred's noncompliance with FACTA until March 2017. (Doc. 29 at 12 ¶ 37). Since then, Ms. Taylor "has expended time, effort, and resources monitoring her financial accounts and credit reports to protect herself from identity theft and financial fraud." (Doc. 29 at 13 ¶ 37). Ms. Taylor further contends that Fred's actions have caused her to "suffer[] other intangible injuries, including … stress, worry, concern, and frustration from the imminent, increased risk of identity theft and financial fraud . . . ." (Doc. 29 at 13 ¶ 38).

Ms. Taylor maintains that Fred's electronic-receipt practices violate 15 U.S.C. § 1681c(g). That section of the FCRA as amended by FACTA provides:

**(g) Truncation of credit card and debit card numbers**

**(1) In general**

Except as otherwise provided in this subsection, <u>no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date</u> upon any receipt provided to the cardholder at the point of the sale or transaction.

**(2) Limitation**

This subsection shall apply only to receipts that are electronically printed, and shall not apply to transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card.

**(3) Effective date**

This subsection shall become effective--

> **(A)** 3 years after December 4, 2003, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is in use before January 1, 2005; and

> **(B)** 1 year after December 4, 2003, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is first put into use on or after January 1, 2005.

15 U.S.C. § 1681c(g) (emphasis by underlining added).

"FACTA was enacted in 2003 as an amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), with the intended purpose of helping to

combat identity theft." *Wood v. J Choo USA, Inc.*, 201 F. Supp. 3d 1332, 1334 (S.D. Fla. 2016) (citing Pub. L. No. 108-159, 117 Stat. 1952 (2003)). As summarized in *Guarisma v. Microsoft Corp.*, 209 F. Supp. 3d 1261 (S.D. Fla. 2016):

> [T]he "FACTA arose from a desire to prevent identity theft that can occur when card holders' private financial information, such as a card holder's complete credit card number, is exposed on electronically printed payment card receipts." *Creative Hosp. Ventures, Inc. v. U.S. Liab. Ins. Co.*, 655 F. Supp. 2d 1316, 1333 (S.D. Fla. 2009), *rev'd in part*, 444 Fed. Appx. 370 (11th Cir. 2011); *see also* 149 Cong. Rec. H8122-02 (statement of Rep. Shadegg) ("[T]he bill requires that anytime a transaction is made and information is transmitted using a credit card number, <u>that number has to be truncated so that someone who wants to steal your identity by grabbing ahold of your credit card number will not have the full number</u>" (alteration added)); 149 Cong. Rec. H8122-02 (statement of Rep. Jackson-Lee) ("This bill ... will include comprehensive identity theft ... provisions." (alterations added)); H.R. Conf. Rep. No. 396, 108th Cong., 1st Sess. (2003) (statement of Rep. Oxley) ("<u>One of the central elements of [the FACTA bill] was to make the new fraud prevention ... contained in the legislation the new uniform national standards on those subject matters. The bill was drafted in this way because identity theft is a national concern</u>." (alterations added)).

*Guarisma*, 209 F. Supp. 3d 1266-67 (emphasis added).

### 2. Ms. Taylor's FACTA Allegations Are Sufficiently Particularized.

Fred's first challenges the particularity of Ms. Taylor's FACTA allegations. (Doc. 32-1 at 8). Fred's raises particularity collectively with several other distinct injury-in-fact concepts:

> In the few allegations specific to herself, [Ms. Taylor] does not

allege an 'actual injury,' let alone on that is 'concrete' and 'particularized' or one that is 'imminent, not conjectural or hypothetical.' She merely alleges that she received a non-compliant receipt that printed "more than the last five digits" and another that printed an expiration date. (FAC ¶¶ 33-35.) [Ms. Taylor] alleges no actual injury or harm of any kind that resulted from these alleged non-compliant receipts. While [Ms. Taylor] has now amended her complaint to add new damages since March 2017—that she has expended resources monitoring her accounts and credit reports and that she has 'intangible injuries' of worrying about hypothetical harm in the future, these injuries are not sufficient for purposes of standing under Article III.

(Doc. 32-1 at 8-9 (emphasis added)); *cf. Spokeo*, 136 S. Ct. at 1548 ("To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete <u>and</u> particularized' <u>and</u> 'actual <u>or</u> imminent, not conjectural or hypothetical.'" (emphasis added) (quoting *Lujan* 504 U.S. at 560 (internal quotation marks omitted))).

As legal support for its particularity position, Fred's primarily relies upon the pre-*Spokeo* case of *Reilly v. Ceridian*, 664 F.3d 38 (3d Cir. 2011) which references concreteness and particularity collectively, but discusses concepts pertaining to concreteness and imminence only. (Doc. 32-1 at 9). Fred's also includes a parenthetical quotation from *In re: Cmty. Health Sys., Inc.*, No. 15-CV-222-KOB, 2016 WL 4732630, at *1 (N.D. Ala. Sept. 12, 2016), *motion to certify appeal denied*, 2017 WL 604334 (N.D. Ala. Feb. 15, 2017), in which that court found an absence of

standing tied to principles of imminence as opposed to particularity. (Doc. 32-1 at 9-10).

In separating constitutional considerations of particularity from concreteness, *Spokeo* reiterates that a particularized injury "must affect the plaintiff in a personal and individual way" 136 S. Ct. at 1548 (internal quotation marks omitted) (quoting *Lujan*, 504 U.S. at 560 n.1). The Court finds that Ms. Taylor has undoubtedly cleared the particularity hurdle and asserted a personal connection to the harm claimed that is sufficient to establish this prong of the standing requirement.

More specifically, Ms. Taylor has alleged that, on three different occasions, Fred's has provided her with non-compliant FACTA receipts relating to purchases that she made with her personal VISA debit card. Upon discovering Fred's FACTA non-compliance, Ms. Taylor asserts that she has spent time monitoring her financial accounts and credit reports to protect herself from identity theft and financial fraud. She also claims that Fred's non-compliance with FACTA has caused her to worry and stress over the theft of her identity and financial fraud.

Finding sufficient particularity in Ms. Taylor's allegations is likewise consistent with the Eleventh Circuit's analysis of particularity in the post-*Spokeo* case of *Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*, 858 F.3d 1362 (11th Cir. 2017), arising under the Telephone Consumer Protection Act ("TCPA"):

Under our precedent, the clinic suffered an injury in fact. "[W]here a statute confers new legal rights on a person, that person will have Article III standing to sue where the facts establish a concrete, particularized, and personal injury to that person as a result of the violation of the newly created legal rights." *Palm Beach Golf*, 781 F.3d at 1251. The Telephone Consumer Protection Act "creates such a cognizable right." *Id.* at 1252. And, as the district court explained, in the context of the Act, the plaintiff suffers a concrete injury because the plaintiff's fax machine is occupied while the unsolicited fax is being sent and the plaintiff must shoulder the cost of printing the unsolicited fax. *See id.* at 1252–53. The clinic alleged in its complaint that it received unsolicited faxes from Arriva. *See* The Florence Endocrine Clinic Compl. 6, ECF No. 1. ("Plaintiff must leave its fax equipment on and ready to receive authorized urgent communications."). Because the clinic's fax machine was occupied and rendered unavailable for legitimate business while processing the unsolicited fax, the clinic established that it suffered a concrete injury. *See Palm Beach Golf*, 781 F.3d at 1252.

858 F.3d at 1366 (emphasis added).[6] Like the TCPA plaintiff in *Arriva*, Ms. Taylor's

allegations sufficiently show how Fred's alleged FACTA violation(s) personally

impacted her.

Thus, particularity is established and the Court now considers the closer

questions of concreteness and imminence.

### 3. Ms. Taylor FACTA Allegations Are Insufficiently Concrete And/Or Imminent.

As *Spokeo* confirms, concreteness requires that Ms. Taylor allegedly endure

---

[6] After confirming the existence of standing in *Arriva*, the Eleventh Circuit affirmed the district court's merits-based dismissal of the case for failure to state a claim. *Id.* at 1367.

a harm that is substantial in an Article III sense. Simply asserting facts that plausibly show a FACTA statutory violation is not automatically enough to trigger constitutional concreteness. Instead, *Spokeo* cautions that whenever a plaintiff, like Ms. Taylor, is claiming <u>intangible</u> harm from a statutory violation, this Court must additionally consider: (i) whether such intangible injury is closely connected to harms that are traditionally cognizable under English and/or American jurisprudence; and (ii) whether such intangible (and otherwise constitutionally inadequate) injury is one that, in the judgment of Congress, should be elevated to a harm that meets the Article III threshold. *Cf. Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1340, 1340-41 (11th Cir. 2017) (concluding post-*Spokeo* that statutory violation of the Video Privacy Protection Act ("VPPA") is concrete without any showing of additional harm in light of the VPPA's "structure and purpose . . . support[ing] the conclusion that it provides actionable rights" and the close nexus of the statutorily-created intangible injury to common-law privacy rights).

The thrust of Fred's concreteness contention is that, at most, it has only committed a procedural violation of FACTA, and further that Ms. Taylor has not shown how its procedural violation caused her to suffer any constitutionally adequate harm. (*See* Doc. 32-1 at 10-11 (arguing that Ms. Taylor has not established a concrete injury as to identity theft); (*id.* at 12-13 (arguing that Ms. Taylor has only alleged a

18

conjectural or theoretical injury as to identity theft)). Fred's additionally claims that "the vast majority of courts have found that a plaintiff's mere allegation of a FACTA violation, without alleging an actual or material risk of harm, is insufficient to establish injury-in-fact." (Doc. 32-1 at 13-14); (*see also id.* at 14-21 (discussing various FACTA and non-FACTA cases)).

In opposition, Ms. Taylor counters that Fred's has violated § 1681c(g) of FACTA in two ways for a period of at least eleven months: Fred's "computerized payment processing system . . . routinely print[ed] ten digits of its customers' debit and credit card numbers [instead of no more than only the last five] or" the expiration dates for those cards instead of none. (Doc. 34 at 3).[7] Ms. Taylor claims two injuries in fact tied to these alleged violations: "(1) [a] violation of her substantive rights conferred to her by Congress [through the passage of FACTA] and (2) an imminent, increased risk of identity theft or payment card fraud." *Id.* Further, from a caselaw standpoint, Ms. Taylor emphasizes that "post-*Spokeo*, every district court in this circuit has found that a statutory violation of § 1681c(g) constitutes an injury in fact."[8] (Doc. 34 at 5). However, since Ms. Taylor filed her opposition brief, at least

_____

[7] All page references to Doc. 34 correspond with the Court's CM/ECF numbering system.

[8] Those intra-circuit post-*Spokeo* FACTA cases decided in Ms. Taylor's favor include: *Altman v. White House Black Mkt., Inc.*, No. 1:15-CV-2451-SCJ, 2016 WL 3946780, at *1 (N.D. Ga. July 13, 2016), *motion to certify appeal denied*, No. 1:15-CV-2451-SCJ, 2016 WL 9047107

two judges sitting in the Southern District of Florida have split with those preexisting intra-circuit authorities. *See Gesten v. Burger King Corp.*, No. 17-22541-CIV, 2017 WL 4326101, at *5 (S.D. Fla. Sept. 27, 2017) (Scola, J.) ("This case [involving a receipt that included the first six in addition to the permissible last four digits of the plaintiff's personal credit card] presents a perfect example of a procedural violation that may result in no harm, in contrast to the examples of statutory violations that constitute concrete injuries in and of themselves."); *Tarr v. Burger King Corp.*, No. 17-23776-CIV, 2018 WL 318477, at *4 (S.D. Fla. Jan. 5, 2018) (Moreno, J.) (citing to *Gesten* and similarly holding that a card-truncation violation that reveals the first six digits fails of a card number fails to "create[] an appreciable risk of harm").

Neither the parties nor this Court has identified binding authority from the Eleventh Circuit or the Supreme Court analyzing concreteness under FACTA post-*Spokeo*. (*See, e.g.*, Doc. 34 at 5-6 ("<u>While the Eleventh Circuit has not specifically decided whether a statutory violation of FACTA constitutes an injury in fact</u>, there have been numerous Eleventh Circuit opinions post-*Spokeo* discussing the same

---

(N.D. Ga. Oct. 13, 2016); *Guarisma*, *supra*, at 14; *Wood*, *supra*, at 14; *Bouton v. Ocean Properties, Ltd.*, 201 F. Supp. 3d 1341 (S.D. Fla. 2016); *Flaum v. Doctor's Assocs., Inc.*, 204 F. Supp. 3d 1337 (S.D. Fla. 2016), *motion to certify appeal denied*, No. 16-61198-CIV, 2016 WL 8677304 (S.D. Fla. Oct. 27, 2016). (Doc. 34 at 5).

question in the context of other statutes.") (emphasis added));[9] (Doc. 35 at 8

("Plaintiff is correct that the Eleventh Circuit has yet to decide whether an alleged

violation of FACTA alone is sufficient to satisfy the injury-in-fact requirement of

standing ….")).[10] The parties have provided the Court with a multitude of competing

cases to consider as persuasive authorities when deciding this post-*Spokeo* issue

under FACTA. Ultimately, the Court is dubious of reliance upon any pre-*Spokeo*

FACTA cases (such as *Amason v. Kangaroo Exp.*, No. 7:09-CV-2117-RDP, 2013 WL

987935 (N.D. Ala. Mar. 11, 2013)), that address concreteness without *Spokeo*'s

guidance regarding alleged statutory violations that result in only intangible injuries.

Instead, this Court focuses upon post-*Spokeo* authorities under FACTA (and other

---

[9] *See, e.g., Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1002 (11th Cir. 2016), *reh'g en banc denied*, 855 F.3d 1265 (11th Cir. 2017) (holding that plaintiff lacked standing to sue for violation of New York mortgage law based on a "delay in recording the certificate of discharge" because he alleged no concrete harm caused by that statutory violation); *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 994 (11th Cir. 2016) (concluding that plaintiff had standing to sue for disclosure violation under the Fair Debt Collection Practices Act because "through the FDCPA, Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures."); *Meeks v. Ocwen Loan Servicing LLC*, 681 F. App'x 791, 793 (11th Cir. 2017) (finding that plaintiff lacked standing to sue for receipt of insufficient form under Regulation X of the Real Estate Settlement Practices Act because he "suffered at most 'a bare procedural violation,' and he cannot show that he suffered a real, concrete injury from Ocwen's actions"). However, *Spokeo* makes it clear that "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." Therefore, the helpfulness of these (and other) non-FACTA decisions for resolving the disputed concreteness of Ms. Taylor's FACTA lawsuit is somewhat limited.

[10] All page references to Doc. 35 correspond with the Court's CM/ECF numbering system.

statutes) in reaching its decision.

### a. Ms. Taylor's Card-Truncation Allegations Lack Concreteness And/Or Imminence.

The Court turns first to whether Ms. Taylor has established a sufficient injury-in-fact based upon Fred's alleged card-truncation violations of FACTA. The Court has studied and weighed the numerous authorities cited by the parties. Ultimately, the Court finds that Ms. Taylor's allegations that Fred's provided <u>her</u> with electronic receipt(s) revealing the first six digits of her debit card number (and the statutorily permissible last four digits) are, in the absence of any non-speculative facts about card fraud or identity theft, insufficiently concrete and/or imminent.[11] Thus, Ms. Taylor has failed to carry her burden of demonstrating an injury-in-fact for this FACTA violation.

Ms. Taylor initially maintains that such a statutory violation of FACTA (by itself) is sufficient to meet concreteness. Under this view, Ms. Taylor's non-compliant receipt–an intangible injury–is the concrete injury. More specifically, Ms. Taylor contends that in passing FACTA, Congress has elevated the card-truncation violation to that constitutional status by transforming it into a substantive right and obviating

---

[11] *Merriam-Webster* defines "imminent" in its online dictionary to mean "ready to take place; *especially*: hanging threateningly" and provides as an example the "*imminent* danger of being run over[.]" https://www.merriam-webster.com/dictionary/imminent.

any need for Ms. Taylor to show additional harm to satisfy constitutional concreteness. Indeed, *Spokeo* acknowledges that in <u>some</u> instances,

> <u>a plaintiff . . . need not allege any *additional* harm beyond the one Congress has identified</u>. *See Federal Election Comm'n v. Akins*, 524 U.S. 11, 20-25, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice*, 491 U.S. 440, 449, 109 S. Ct. 2558, 105 L. Ed. 2d 377 (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").

*Spokeo*, 136 S. Ct. at 1549-50 (emphasis by underlining added); *see also id.* at 1549 (confirming that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before") (internal quotation marks omitted); *cf. id.* ("This does not mean, however, that the risk of real harm cannot satisfy the requirement of concreteness.").

Although not arising under FACTA, this Court has previously relied on *Susinno v. Work Out World Inc.*, 862 F.3d 346 (3d Cir. 2017), when deciding a *Spokeo* dispute arising under the TCPA. *See Hossfeld v. Compass Bank*, No. 2:16-CV-2017-VEH, 2017 WL 5068752, at *7-8 (N.D. Ala. Nov. 3, 2017) (relying upon *Susinno* in finding an intangible TCPA violation sufficiently concrete without any showing of additional harm). The Court believes that revisiting *Susinno* will be

helpful to contrast the FACTA card-truncation issue of concreteness presented here.

*Susinno* involved a plaintiff suing under the TCPA for a "single solicitation" to her cell phone from a fitness company that resulted in the "receipt of [a] call and voicemail[.]" 862 F.3d at 348. The district court dismissed the plaintiff's case for lack of subject matter jurisdiction and the Third Circuit reversed. *Id.* The Third Circuit described the two questions on appeal as: "Does the TCPA prohibit the conduct alleged by Susinno? And if it does, is the harm alleged sufficiently concrete for Susinno to have standing to sue under Article III of the United States Constitution?" *Id.*

After addressing the first question affirmatively,[12] the Third Circuit turned to the issue of concreteness. Before evaluating the sufficiency of the TCPA allegations, the Third Circuit summarized its post-*Spokeo* holding in the FCRA case of *In re Horizon Healthcare Services Inc. Data Breach Litigation*, 846 F.3d 625 (3d Cir. 2017):

> We summarize *Horizon*'s rule as follows. When one sues under a statute alleging "the very injury [the statute] is intended to prevent," and the injury "has a close relationship to a harm ... traditionally ... providing a basis for a lawsuit in English or American courts," a

---

[12]  The defendant in *Susinno* had argued that because the plaintiff did not incur a charge for the call to her cell phone, the TCPA did not apply. Relying upon the Eleventh Circuit's decision in *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1257 (11th Cir. 2014), the Third Circuit rejected the defendant's construction of 47 U.S.C. § 227(b)(1) as "strained" and counter to the grammatical rule of the last antecedent. 862 F.3d at 349.

concrete injury has been pleaded. *Id.* at 639-40. We do not, and need not, conclude that intangible injuries falling short of this standard are never concrete. *See Horizon*, 846 F.3d at 638 (declining to determine minimum standard of concreteness where unnecessary to decide case). Rather, we simply observe that all intangible injuries that meet this standard *are* concrete.

862 F.3d at 351 (emphasis in original).

Then applying its *Horizon* framework to the TCPA allegations before it, the

Third Circuit found the presence of concreteness in *Susinno* for two reasons:

First, Congress squarely identified this injury. The TCPA addresses itself directly to single prerecorded calls from cell phones, and states that its prohibition acts "in the interest of [ ] privacy rights." 47 U.S.C. § 227(b)(2)(C). The congressional findings in support of the TCPA likewise refer to complaints that "automated or prerecorded telephone calls are a nuisance [and] ... an invasion of privacy." Pub. L. 102–243, § 2. We therefore agree with Susinno that in asserting "nuisance and invasion of privacy" resulting from a single prerecorded telephone call, her complaint asserts "the very harm that Congress sought to prevent," arising from prototypical conduct proscribed by the TCPA. App. 11 (First Amended Complaint); *see also Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (finding two unwanted text messages constituted a concrete injury under the TCPA, as they "present the precise harm and infringe the same privacy interests Congress sought to protect").

Having determined that the amended complaint pleaded an injury Congress aimed to prevent, we turn next to the historical inquiry. We think Susinno has satisfied this test as well. As we said in *Horizon*, a close relationship does not require that the newly proscribed conduct would "give rise to a cause of action under common law." 846 F.3d at 639. But it does require that newly established causes of action protect essentially the same interests that traditional causes of action sought to protect. The Court of Appeals for the Ninth Circuit has opined that

> TCPA claims closely relate to traditional claims for "invasions of privacy, intrusion upon seclusion, and nuisance [which] have long been heard by American courts." *Van Patten*, 847 F.3d at 1043. In our view, <u>intrusion upon seclusion best fits the facts of this case</u>.

*Susinno*, 862 F.3d at 351 (emphasis added); *cf. also Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir.), *cert. denied*, 138 S. Ct. 447 (2017) (explaining post-*Spokeo* that the FCRA "<u>creates a right to privacy</u> by enabling applicants to withhold permission to obtain the report from the prospective employer, and <u>a concrete injury when applicants are deprived of their ability to meaningfully authorize the credit check</u>") (emphasis added).

Here, the Court finds that the legal landscape surrounding Ms. Taylor's card-truncation claim is significantly different than the TCPA violations that this Court dealt with in *Hossfeld* and the Third Circuit decided in *Susinno*. First, the TCPA violation at issue in *Hossfeld* and *Susinno*–the receipt of an unwanted automated phone call–shares a close relationship with privacy rights and, in particular, the common-law claim of intrusion upon seclusion. Second, the legislative history of the TCPA expressly linked the statutory violation created by Congress to privacy interests. Consequently, neither this Court nor the *Susinno* court had to reach whether a showing of additional harm was necessary to satisfy concreteness. *Cf. also Horizon*, 862 F.3d at 351 ("We do not, and need not, conclude that intangible injuries falling

short of this [*Spokeo*-inspired] standard are never concrete.").

Unlike the plaintiff in *Hossfeld*, Ms. Taylor has not attempted to connect her card-truncation claim to any historically-recognized cause of action arising under English or American jurisprudence. Further, more than one district court has expressly found that the type of FACTA card-truncation violation that Ms. Taylor relies upon lacks a sufficient nexus to traditional privacy rights. *See Kamal v. J. Crew Grp., Inc.*, No. CV 2:15-0190 (WJM), 2017 WL 2443062, at *3 (D.N.J. June 6, 2017), *amended on other grounds by* 2017 WL 2587617 (D.N.J. June 14, 2017), *appeal filed*, No. 17-2345 (3d Cir. June 22, 2017) (relying upon *Horizon* framework and concluding that "[t]here is no meaningful relationship between J. Crew's conduct [in printing a card's first six and last four digits] and any privacy interest historically recognized at common law"); *id.* ("Unlike in *Horizon*, Plaintiff's personal information was not disclosed to third parties or used to perpetrate credit-card or tax fraud."); *id.* ("[P]rinting a card's first six and last four digits—rather than only the last five digits—does not implicate the historic 'right to be let alone,' particularly when the first six digits do not pertain to the customer's individual bank account."); *Katz v. Donna Karan Int'l, Inc.*, No. 14 CIV. 740 (PAC), 2017 WL 2191605, at *6 (S.D.N.Y. May 17, 2017), *aff'd and remanded sub nom. Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114 (2d Cir. 2017) ("Plaintiff does not establish that Congress intended to create

for credit card holders a privacy right in their information required to be redacted or truncated from receipts."); *cf. also Katz*, 872 F.3d at 120 (determining on appeal that "the district court did not clearly err in concluding that printing the IIN[–the first six digits of a card–]does not increase the risk of real harm"); *cf. Kamal*, 2016 WL 6133827, at *4 (D.N.J. Oct. 20, 2016) (reasoning (in earlier Rule 12(b)(1) dismissal of complaint, but allowing for repleader) that "[w]hile FACTA as a whole may implicate traditional privacy interests, <u>Plaintiff's alleged injury does not</u>." (emphasis added)).

This Court is persuaded by the reasoning in *Kamal* and *Katz*. Any relationship between a card-truncation claim (revealing a card's first six digits) and historical privacy interests is too attenuated to be a "close" one. Consequently, even if Ms. Taylor had attempted to rely upon traditional privacy rights to establish concreteness (she did not), the Court finds that such a theory is unsustainable.

Ms. Taylor also has not identified how the judgment of Congress (for example, by way of FACTA's legislative history) confirms the presence of a concrete injury corresponding to the type of card-truncation violation that she asserts here. Further, Ms. Taylor has made no effort to challenge the no-real-harm reasoning utilized by several courts in determining that improperly revealing the first six numbers of a card (as Ms. Taylor has alleged) cannot constitute a concrete injury (without more)

because those initial numbers always correspond to the card's issuer and never represent information unique to the account holder. *See, e.g., Kamal*, 2017 WL 2443062, at *4 ("The first six [numbers] relate to the bank or card-issuer and the last 10 refer to the card-holder's specific account."); *Noble v. Nevada Checker CAB Corp.*, No. 215CV02322RCJVCF, 2016 WL 4432685, at *2 (D. Nev. Aug. 19, 2016), *appeal filed*, No. 16-16573 (9th Cir. Sept. 7, 2016) ("Knowing, as discussed in the *Toys 'R' Us* litigation, that the first few digits represent information concerning the card issuer and that only the latter digits represent personal account numbers, 'more than the last 5 digits' would appear to restrict only printing the last six or more digits."); *Katz*, 2017 WL 2191605, at *5 ("The additional digits identify the card issuer; and do not disclose any information pertaining to Plaintiff.").

Additionally, because printing the name of the particular card issuer is not prohibited by FACTA, the inclusion of the digits representing that same information cannot be material to the harm of identity theft (which FACTA seeks to prevent). *Cf. Noble*, 2016 WL 4432685, at *3 ("Although Plaintiffs argue that Defendants here did not separately print the name of the card issuer, such that the first number gives a potential fraudster 'extra' information, the fact remains that 'extra' information is not of the type Congress has prohibited the printing of."). As *Spokeo* indicates, intangible statutory violations that do not intersect with or trigger a law's stated purpose in a

meaningful or material way cannot be concrete. Fred's disclosure of the first six digits of Ms. Taylor's debit card is comparable to reporting an incorrect zip code or failing to send a credit report to a user that does not contain any inaccurate information–that specific FACTA violation is "divorced from any concrete harm" or falls beyond the "chain[] of causation that will give rise to a case or controversy[.]" *Spokeo*, 136 S. Ct. at 1549 (internal quotation marks omitted).

In her opposition, Ms. Taylor does not meet head-on Fred's arguments or FACTA authorities rejecting the substantive-rights approach to establishing concreteness. Instead, the thrust of her contention is that this Court should find unpersuasive those FACTA cases that have found an absence of concreteness or an injury-in-fact because they fall outside of the Eleventh Circuit. However, in light of the *Gesten* and *Tarr* opinions cited *supra*, at 20, the analysis of standing under FACTA is no longer uniform within the Eleventh Circuit.

Further, this Court agrees with *Gesten* that the card-truncation (and expiration-date) cases upon which Ms. Taylor relies (such as *Guarisma*) are flawed analytically due to their pre-*Spokeo* underpinnings:

> Each of these opinions either relied on *Guarisma v. Microsoft Corp.*, which in turn relied on *Hammer v. Sam's E., Inc.*, an Eighth Circuit opinion decided before *Spokeo*, or relied directly on *Hammer*. *See, e.g., Wood*, 201 F. Supp. 3d at 13376 (discussing *Guarisma* at length); *Altman*, 2016 WL 3946780, at *4 ("This Court reached its

conclusion after reviewing persuasive authority, specifically the Eighth Circuit's decision in *Hammer* ...."). In *Hammer*, the Eighth Circuit stated that "the actual-injury requirement may be satisfied solely by the invasion of a legal right that Congress created," and held that an alleged violation of FACTA constituted an injury in fact in and of itself because FACTA "gave consumers the legal right to obtain a receipt at the point of sale showing no more than the last five digits of the consumer's credit or debit card number." 754 F.3d 492, 498 (8th Cir. 2014) (emphasis in original) (internal citations omitted). However, the Eighth Circuit subsequently recognized that *Spokeo* superseded *Hammer*, noting that *Spokeo* requires that "[a] concrete injury must 'actually exist,' and it must be 'real,' not 'abstract' ". *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 929-31 (8th Cir. 2016) (quoting *Spokeo*, 136 S. Ct. at 1548) (holding that the plaintiff's allegation that the defendant violated the Cable Communications Policy Act by failing to destroy the plaintiff's personally identifiable information after he canceled his cable services did not have standing because the plaintiff did not allege that the information had been disclosed to third parties or used in any way). Therefore, several courts outside of this circuit have questioned the reliance of courts within this circuit on *Guarisma* and *Hammer*. *See, e.g. Batra v. RLS Supermarkets LLC*, No. 3:16-cv-2874-B, 2017 WL 3421073, at *5 fn.4 (N.D. Tex. Aug. 9, 2017) (stating that the cases from this circuit are unpersuasive because they rely in part on *Hammer*); *Lewellyn v. AZ Compassionate Care Inc.*, No. 16-04181, 2017 WL 1437632, at *3 (D. Ariz. April 24, 2017) (explicitly disagreeing with the courts in this circuit holding that FACTA confers a substantive right); *Cruper-Weinmann v. Paris Baguette America, Inc.*, 235 F. Supp. 3d 570, 576 n.3 (S.D.N.Y. 2017) (noting that "there is reason to question th[o]se cases' basis for concluding that FACTA confers such a substantive right," since *Altman* and *Guarisma* rely on *Hammer*, and *Wood* relies entirely on *Guarisma* and *Altman*).

The conclusion of district courts in this circuit that the violation of a substantive right created by Congress is sufficient on its own to confer standing on a plaintiff [without undergoing any further intangible harm analysis] is contrary to the holding of *Spokeo*. . . . [T]he *Spokeo* Court specifically cautioned that "Congress' role in identifying and

elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.

*Gesten*, 2017 WL 4326101, at *3-4 (S.D. Fla. Sept. 27, 2017) (emphasis added); *see also Braitberg*, 836 F.3d at 930 ("In *Spokeo*, however, the Supreme Court rejected this absolute view and superseded our precedent in *Hammer* and *Charvat*."); *cf. also Bouton*, 201 F. Supp. 3d 1341, 1352 ("[C]onsistent with *Guarisma* and for the reasons explained below, the Court finds Plaintiff's injury 'concrete,' as FACTA 'created a substantive right for individuals to receive printed receipts that truncate their personal credit card information, in order to decrease the ever-present threat of identity theft.'"); *Flaum*, 204 F. Supp. 3d at 1339 ("The Court's discussion [in *Guarisma*] resolves the issue presented here."). Thus, this Court follows *Gesten*'s lead and rejects the earlier line of intra-circuit cases that have found concreteness for a FACTA card-truncation claim (like Ms. Taylor's) under a substantive-rights model post-*Spokeo*.[13]

---

[13] The Court acknowledges that Ms. Taylor also heavily relies upon the Eleventh Circuit's unpublished post-*Spokeo* opinion in *Church*, involving inadequate disclosures made to the plaintiff under the FDCPA, to support her concreteness contentions under FACTA. (Doc. 34 at 9). Absent from *Church* is a discussion of *Spokeo*'s historical-assessment factor. Regardless, this Court is not persuaded to extend the concreteness analysis in *Church*–the failure to make certain disclosures is the concrete harm aimed to "eliminate abusive debt practices by debt collectors[,]" 15 U.S.C. § 1692(e)–to either one of Ms. Taylor's FACTA claims. As Fred's argues (Doc. 32-1 at 18-20), the required-disclosures FDCPA violation discussed in *Church* is a more certain and immediate injury than the FACTA violations described by Ms. Taylor in her

Alternatively, even assuming that a FACTA card-truncation violation can, at times, be a concrete claim without the showing of any additional harm, Ms. Taylor's FACTA allegations still require too many leaps to link her statutory injury to any real material harm that Congress aimed to protect against in passing FACTA. *See Katz*, 2017 WL 2191605, at *4 ("Defendants' issuance of two partially-truncated receipts—<u>without any allegations of stolen identity or that a third party had access to the receipts</u>—does not cause Plaintiff any actual harm, nor do the receipts present a 'material risk of harm to [the] underlying interest' created and identified by FACTA: the prevention of identity theft." (emphasis added) (quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016)));[14] *cf. Nicklaw v. CitiMortgage, Inc.*, 855

---

lawsuit. As discussed more below, the type of information disclosed on the receipts that Ms. Taylor complains about neither resulted in any identity-theft harm nor materially enhanced her exposure to identity theft.

[14] In *Strubel*, the Second Circuit analyzed the concreteness of several Truth in Lending Act ("TILA") violations post-*Spokeo*. As the *Strubel* court succinctly explained:

> [W]e understand *Spokeo*, and the cases cited therein, to instruct that an alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a "risk of real harm" to that concrete interest. *Id.* at 1549. But even where Congress has accorded procedural rights to protect a concrete interest, <u>a plaintiff may fail to demonstrate concrete injury where violation of the procedure at issue presents no material risk of harm to that underlying interest</u>.

842 F.3d at 190 (emphasis added). Pursuant to the *Spokeo* framework, the Second Circuit determined that some of the alleged TILA violations before it were sufficiently concrete while others did not "create[] a 'material risk of harm' . . . to Strubel's interest in avoiding the uninformed use of credit." 842 F.3d at 191.

F.3d 1265, 1268 (11th Cir. 2017) (opinion on denial of reh'g en banc) (Pryor & Marcus, JJ.) ("*Spokeo* explained that a violation of the [FCRA] <u>will not always cause a consumer to suffer a concrete injury</u>.") (emphasis added); (*cf. also* Doc. 35 at 4 (Fred's acknowledging that "alleged violations of certain statutory schemes, could, in context-specific circumstances, be sufficient to constitute injury in fact, but the alleged bare violation of FACTA in Plaintiff's Amended Complaint is not [that situation")). Akin to *Katz*, the only receipts which Ms. Taylor knows for certain violated the card-truncation requirement are those that she kept (and did not lose or discard). Further, she makes no allegation that a third party somehow got access to any receipts or card issuer numerical information. Therefore, these facts do not show that Ms. Taylor was materially harmed by Fred's card-truncation violations that she knows occurred.

As for the other Fred's receipts that she either lost or threw away, Ms. Taylor only asserts that they were "likely" non-compliant. Further, she does not know in which way they were possibly non-compliant–they may have contained card-truncation violations (in the same format as her known ones or in some other format), expiration-date violations, or no FACTA violations. These uncertain facts are too speculative to establish concreteness for her card-truncation claim (even if Congress intended to elevate that intangible injury to a concrete status in passing FACTA). *See*

*Katz*, 2017 WL 2191605, at *5 ("Plaintiff does not allege any facts showing that he experienced the Congressionally-proscribed harm: identity theft. He has not established a present injury in fact.").

Ms. Taylor's second statement of an injury-in-fact is that she faced an imminent, increased risk of identity theft (including her negatively impacted mental state and steps taken to prevent this perceived risk). These allegations do not alter this Court's conclusion about the absence of a constitutionally-sufficient injury for her card-truncation claim. As *Spokeo* indicates, "[a] violation of one of [a statute]'s procedural requirements may result in no harm" or no "material risk of harm."[15] 136 S. Ct. at 1550. Here, Ms. Taylor has alleged injuries flowing from the latter category–a purported imminent, increased <u>risk</u> of material harm attributable to Fred's card-truncation violation of FACTA.

As more specifically presented in her FAC, Ms. Taylor alleges that she "has expended time, effort, and resources monitoring her financial accounts and credit reports to protect herself from identity theft and financial fraud." (Doc. 29 at 13 ¶ 37). Ms. Taylor further asserts that she "has also suffered other intangible injuries, including, but not limited to, stress, worry, concern, and frustration from the

---

[15] The *Spokeo* Court also refers to this type of a concrete injury as "the risk of real harm[.]" 136 S. Ct. at 1549.

imminent, increased risk of identity theft and financial fraud ….” (*Id.* ¶ 38).

However, Ms. Taylor has not alleged any facts to establish why her risk of identity theft was increased by Fred’s impermissibly including the six first digits of her debit card’s number on her receipt. *Cf. Katz*, 2017 WL 2191605, at *5 (“But while an increased risk of identity theft may, in some instances, constitute a concrete harm, those circumstances are not alleged here.”). Put differently, Ms. Taylor has not linked her other intangible injuries to any <u>real</u> or non-speculative increase in the risk of harm that FACTA seeks to prevent. Further, in the absence of asserting non-speculative facts, Ms. Taylor has not demonstrated how her risk of identity threat is <u>imminent</u>. At best, she has presented only a theoretical future harm of card fraud or identity theft. *Cf. Hendrick v. Aramark Corp.*, 263 F. Supp. 3d 514, 520 (E.D. Pa. 2017), *appeal dismissed*, No. 17-2120, 2017 WL 5664867 (3d Cir. Oct. 31, 2017).

In reaching this conclusion, the Court agrees with Fred’s that the Third Circuit’s imminence-driven decision in *Reilly* is instructive here. (Doc. 32-1 at 9). *Reilly* concerned a data-breach incident at a payroll processing firm. 664 F.3d at 40. The *Reilly* plaintiffs brought suit and alleged “an increased risk of identity theft, … costs [attributable] to monitor[ing] their credit activity, and . . . emotional distress. *Id.* Like Ms. Taylor, the *Reilly* plaintiffs did not assert any actual misuse of their identity or any known disclosure of data to a third party.

As *Reilly* described the injury-in-fact framework relevant to the plaintiffs' case:

> An injury-in-fact <u>"must be concrete in both a qualitative and temporal sense</u>. The complainant must allege an injury to himself that is 'distinct and palpable,' as distinguished from merely 'abstract,' and the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical.' " *Whitmore*, 495 U.S. at 155, 110 S. Ct. 1717 (internal citations omitted).

> Allegations of "possible future injury" are not sufficient to satisfy Article III. *Whitmore*, 495 U.S. at 158, 110 S. Ct. 1717; *see also Lujan*, 504 U.S. at 564 n. 2, 112 S. Ct. 2130 (stating that allegations of a future harm at some indefinite time cannot be an "actual or imminent injury"). Instead, "[a] threatened injury must be 'certainly impending,'" *Whitmore*, 495 U.S. at 158, 110 S. Ct. 1717 (internal citation omitted), and "proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all," *Lujan*, 504 U.S. at 564 n.2, 112 S. Ct. 2130; *Whitmore*, 495 U.S. at 155, 110 S. Ct. 1717 (explaining that the imminence requirement "ensures that courts do not entertain suits based on speculative or hypothetical harms"). <u>A plaintiff therefore lacks standing if his "injury" stems from an indefinite risk of future harms inflicted by unknown third parties.</u> *See Lujan*, 504 U.S. at 564, 112 S. Ct. 2130.

*Reilly*, 664 F.3d at 42 (emphasis added).

Utilizing these principles, the Third Circuit agreed with the district court that the plaintiffs lacked standing due to their "allegations of hypothetical, future injury[.]" *Id.* The Third Circuit found that the plaintiffs' allegations of emotional distress failed to confer standing because "[a]ny damages that may occur here are entirely speculative and dependent on the skill and intent of the hacker." *Id.* at 45. The *Reilly* court also "declined to analogize this case to those cases in the medical

device, toxic tort or environmental injury contexts" in which the link between emotional harm and standing was without any theoretical involvement of a third party and more certain. 664 F.3d at 46.

As for the plaintiffs' expenditures tied to credit monitoring, the Third Circuit concluded that:

> Appellants' alleged time and money expenditures to monitor their financial information do not establish standing, because costs incurred to watch for a speculative chain of future events based on hypothetical future criminal acts are no more "actual" injuries than the alleged "increased risk of injury" which forms the basis for Appellants' claims. *See Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 8 (D.D.C.2007) ("[T]he 'lost data' cases ... clearly reject the theory that a plaintiff is entitled to reimbursement for credit monitoring services or for time and money spent monitoring his or her credit."). That a plaintiff has willingly incurred costs to protect against an alleged increased risk of identity theft is not enough to demonstrate a "concrete and particularized" or "actual or imminent" injury. *Id.*; *see also Amburgy*, 671 F. Supp. 2d at 1053 (holding plaintiff lacked standing even though he allegedly spent time and money to protect himself from risk of future injury); *Hammond v. Bank of N.Y. Mellon Corp.*, No. 08–6060, 2010 WL 2643307, at *4, *7 (S.D.N.Y. June 25, 2010) (noting that plaintiffs' "out-of-pocket expenses incurred to proactively safeguard and/or repair their credit" and the "expense of comprehensive credit monitoring" did not confer standing); *Allison v. Aetna, Inc.*, No. 09–2560, 2010 WL 3719243, at *5 n. 7 (E. D. Pa. Mar. 9, 2010) (rejecting claims for time and money spent on credit monitoring due to a perceived risk of harm as the basis for an injury in fact).

Although Appellants have incurred expenses to monitor their accounts and "to protect their personal and financial information from imminent misuse and/or identity theft," App. 00021, they have not done so as a result of any actual injury (e.g. because their private information

was misused or their identities stolen). <u>Rather, they prophylactically spent money to ease fears of future third-party criminality. Such misuse is only speculative—not imminent. The claim that they incurred expenses in anticipation of future harm, therefore, is not sufficient to confer standing</u>.

*Reilly*, 664 F.3d at 46 (emphasis added); *see also In re: Cmty. Health*, 2016 WL 4732630, at *10 ("When, as here, increased risk of harm is not substantial and the hypothetical future harm is not certainly impending, Plaintiffs cannot 'manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.'" (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013))).[16]

Further, even assuming that Ms. Taylor knew for certain that Fred's violated the card-truncation provision on other occasions and someone else in her household mistakenly threw away all of those non-compliant receipts, "[i]t is difficult to imagine how the [losing or discarding] of [receipts revealing the additional first six numbers that correspond with the issuer of her debit card–VISA], without more, could work any concrete harm." *Spokeo*, 136 S. Ct. at 1550. Importantly, Ms. Taylor does not refute what the first six digits systematically represent or explain why including the first six digits of her card number on otherwise compliant FACTA receipts escalates

---

[16] Ms. Taylor does not respond to Fred's *Reilly*-based challenge of her second statement of an injury-in-fact.

or makes more likely her risk of identity theft.

As one district court has illustrated the difference between amorphous allegations that establish only a speculative risk of identity theft versus ones that meet the injury-in-fact muster:

> These few alleged facts make out only a bare procedural violation of FACTA. While it is true that under certain conditions an increased risk of identity theft can constitute a concrete, "certainly impending" harm, those conditions have not been alleged in this case. *See, e.g., Krottner v. Starbucks Corp.*, 628 F.3d 1139, (holding <u>the plaintiffs had alleged a credible threat of real and immediate harm due to the increased risk of identity theft stemming from a stolen laptop containing unencrypted personal data</u>). Instead, Plaintiff alleges he, and no one else, received the receipt containing more than the last five digits of his credit card number. <u>Thus, unless a litany of speculative events come about, the risk that Plaintiff will be subjected to the type of "low tech" identity theft identified in the FAC is too attenuated to constitute a qualifying injury in fact for standing,</u> even if Plaintiff successfully alleged a violation of FACTA. *See Krottner*, 628 F.3d at 1143 ("Were Plaintiffs-Appellants' allegations more conjectural or hypothetical – for example, if no laptop had been stolen, and Plaintiffs had sued based on the risk that it would be stolen at some point in the future – we would find the threat far less credible.").

*Stelmachers v. Verifone Sys., Inc.*, No. 5:14-CV-04912-EJD, 2016 WL 6835084, at *4 (N.D. Cal. Nov. 21, 2016) (emphasis added) (footnotes omitted). Such speculative events described by the *Stelmachers* court included:

> Plaintiff could discard the receipt (despite knowing its contents) so that it can be found by a "dumpster diver," or the receipt could be stolen from Plaintiff and then used by a "carder," or the taxi cab driver could have made a surreptitious copy or memorized the numbers on the receipt

> with a nefarious motive, or rogue employees who may or may not have access to Verifone's database could somehow obtain Plaintiff's credit card information.

2016 WL 6835084, at *4 n.3. Drawing upon the foregoing authorities, this Court is persuaded that Ms. Taylor's preventative actions taken and her negatively-impacted state of mind  are not enough to establish an injury-in-fact here as the underlying risk of "low-tech" identity theft tied to Fred's card-truncation violation is so speculative for both the retained and the lost/discarded receipts and further is certainly far from imminent.

Thus, the Court finds that Ms. Taylor has not carried her burden of demonstrating an injury-in-fact concerning Fred's card-truncation statutory violation. Now the Court turns to a similar evaluation of Fred's alleged expiration-date violation of FACTA.

### b. Ms. Taylor's Expiration-Date Allegations Likewise Lack Concreteness And/Or Imminence.

Ms. Taylor's approach to satisfying the injury-in-fact requirement for her expiration-date claim is identical to her card-truncation claim:  First, she contends that an expiration-date violation of FACTA (by itself) is a sufficient injury-in-fact because it violates her substantive rights. (Doc. 34 at 3). Second, Ms. Taylor maintains that this statutory violation exposes her to an imminent, increased risk of

identity theft or payment card fraud. *Id.*

Consistent with the Court's reasoning regarding her card-truncation claim, Ms. Taylor has not carried her jurisdictional burden with either statement of an injury-in-fact. Concerning Ms. Taylor's substantive-rights approach to her FACTA expiration-date claim, she has not addressed either part of *Spokeo*'s evaluative framework for determining the concreteness of a federally-created intangible statutory harm–the historical/common-law connection and the judgment-of-Congress assessment.

Further, both the Seventh and the Second Circuits (in published FACTA cases) have determined that merely alleging a violation of FACTA's expiration-date provision to establish an injury-in-fact is inconsistent with *Spokeo*. In *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 2267 (2017), the Seventh Circuit rejected this type of reasoning an held "that without a showing of injury apart from the statutory violation, the failure to truncate a credit card's expiration date is insufficient to confer Article III standing." *Id.* at 728-29; *accord Crupar-Weinmann v. Paris Baguette Am., Inc.*, 861 F.3d 76, 82, 78 (2d Cir. 2017) (joining the Seventh Circuit and finding lack of injury-in-fact under FACTA when "complaint is otherwise devoid of specific factual allegations concerning [the plaintiff's] interaction with the restaurant or any consequences that stemmed from the display of her credit card's expiration date on the printed receipt"); *cf. also Lindner*

*v. Roti Restaurants, LLC*, No. 17-CV-935, 2017 WL 3130755, at *3 (N.D. Ill. July 24, 2017) (concluding that reasoning in "*Meyers* controls the outcome of the remand motion" pertaining to a FACTA card-truncation violation even though *Meyers* is a FACTA expiration-date case); *id.* ("To be sure, the offending receipt in *Meyers* included unredacted expiration dates rather than too many digits of the credit card number, but the Court sees no principled basis for distinguishing between the twin harms targeted by Congress . . . .").

In *Meyers*, the plaintiff sued the defendant for violating FACTA's expiration-date-truncation requirement. 843 F.3d at 727. However, the plaintiff did not identify <u>any</u> harm flowing from that statutory violation and, during oral argument, "staked his entire standing argument on the statute's grant of a <u>substantive right</u> to receive a compliant receipt." *Id.* at 727 n.2 (emphasis added). The Seventh Circuit found such a position to be antithetical to the teachings of *Spokeo*:  "A violation of a statute that causes no harm does not trigger a federal case. That is one of the lessons of *Spokeo*." *Id.*; *cf. Spokeo*, 136 S. Ct. at 1550 ("A violation of one of the FCRA's procedural requirements may result in no harm."); *cf. also Nicklaw, Inc.*, 839 F.3d at 1002 (finding post-*Spokeo* the absence of a concrete injury to sue in federal court premised upon a state statutory violation and "the New York legislature['s] inten[tion] to create a substantive right to have the certificate of discharge timely recorded").

The *Meyers* court further pointed out that, in passing the Credit and Debit Card Receipt Clarification Act of 2008, Pub. L. 110–241, 122 Stat 1565 (the "Clarification Act").[17]

> Congress made a finding of fact that "[e]xperts in the field agree that proper truncation of the card number, by itself as required by the [FACTA], regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud." Pub. L. 110–241, § 2(a)(6). Congress was instead quite concerned with the abuse of FACTA lawsuits, finding that "the continued appealing and filing of these lawsuits represents a significant burden on the hundreds of companies that have been sued and could well raise prices to consumers without corresponding consumer protection benefit." *Id.* § 2(a)(7). That is why Congress sought to limit FACTA lawsuits to consumers "suffering from any actual harm." *Id.* § 2(b).

843 F.3d at 727-28 (emphasis added). Thus, the *Meyers* court utilized the legislative reasoning behind the passage of the Clarification Act to underscore why an expiration-date violation of FACTA (without more) is not a sufficiently concrete injury. *See also* Clarification Act, Pub. L. 110–241 § 2(a)(6) ("Experts in the field agree that proper truncation of the card number, by itself as required by the amendment made by the Fair and Accurate Credit Transactions Act, regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating

---

[17] The Clarification Act "provided amnesty for defendants that had only violated FACTA's expiration-date-truncation requirement between December 4, 2004[,] and June 23, 2008." (Doc. 34 at 9 n.3); *see also* 15 U.S.C. § 1681n(d) (providing that "a person who printed an expiration date on any receipt" during the Clarification Act's grace period, "but otherwise complied with the requirements of section 1681c(g) . . . shall not be in willful noncompliance with section 1681c(g)").

identity theft or credit card fraud.") (emphasis added); *cf. Spokeo*, 136 S. Ct. at 1549

("In determining whether an intangible harm constitutes injury in fact, both history

and the judgment of Congress play important roles.") (emphasis added); *cf. id.* at

1550, 1546 (offering the reporting of an inaccurate zip code "without more" as a

straightforward example of a FCRA violation that lacks concreteness even though the

FCRA"requires consumer reporting agencies to follow 'reasonable procedures to

ensure maximum possible accuracy of' consumer reports" (quoting 15 U.S.C. §

1681e(b))).

This Court understands the *Meyers*'s holding to mean that a FACTA claim

premised upon the inclusion of an expiration date on an otherwise compliant receipt

is not sufficiently concrete because the harm of identity theft (which FACTA seeks

to combat) is not made more likely due to such a statutory violation. Consequently,

a plaintiff must, at a minimum, identify some additional harm flowing from that

FACTA violation to establish concreteness. The Court is persuaded by *Meyers* and

those authorities that have followed it. Stated differently, to the extent that Congress

intended to elevate the expiration-date violation to concrete status through the

passage of FACTA, Congress demoted that violation's status by virtue of its

reasoning for subsequently passing the Clarification Act.

Importantly, nowhere does Ms. Taylor allege that she ever received a receipt

from Fred's that included both her expiration date <u>and</u> more than the last five digits of her card. In light of the Clarification Act, those two violations of FACTA <u>combined</u> might very well satisfy constitutional concreteness without any showing of additional harm, but Ms. Taylor's facts do not present that case.[18] *Cf.* 15 U.S.C. § 1681n(d) (providing that "a person who printed an expiration date on any receipt" during the Clarification Act's grace period, "<u>but otherwise complied with the requirements of section 1681c(g)</u> . . . shall not be in willful noncompliance with section 1681c(g)") (emphasis added); *cf. also Fullwood v. Wolfgang's Steakhouse, Inc.*, No. 13 CIV. 7174 (KPF), 2017 WL 5157466, at *5 (S.D.N.Y. Nov. 3, 2017) ("According to Congress's reasoning in the Clarification Act, as interpreted by the Second Circuit in *Crupar-Weinmann*, <u>it does not matter how many receipts Plaintiff received from Wolfgang's that contained her credit card's expiration date, so long as her credit card number was appropriately redacted</u>.") (emphasis added). Therefore, the Court rejects Ms. Taylor's substantive-rights approach to establishing concreteness for Fred's alleged expiration-date violation of FACTA.

Ms. Taylor secondarily maintains that Fred's FACTA expiration-date violation

---

[18] In a footnote of Ms. Taylor's opposition brief, she distinguishes her case from *Noble* on the basis that Fred's "printed ten digits <u>and</u> the expiration date of the payment card." (Doc. 34 at 22 n.11 (emphasis added)). However, this statement is inconsistent with the allegations in her FAC. (*See* Doc. 29 at 12 ¶ 36 (indicating that other lost/discarded receipts from Fred's "likely contain more that the last five digits <u>or</u> the expiration date of her VISA debit card") (emphasis added)).

constitutes an injury-in-fact because it has caused her the additional harm of "an imminent, increased risk of identity theft or payment card fraud." (Doc. 34 at 3). As *Spokeo* indicates, "[a] violation of one of [a statute]'s procedural requirements may result in no harm" or no "material risk of harm."[19] 136 S. Ct. at 1550. Here, Ms. Taylor has alleged injuries flowing from the latter category–a purported increased risk of material harm (as well as stress over that risk and actions taken to reduce that risk) attributable to Fred's expiration-date violation of FACTA.

Admittedly, the scope of *Meyers* does not involve any alleged additional injuries or preventive actions taken that are tied to a non-compliant FACTA receipt. Nonetheless, the above *Meyers*-based reasoning applies equally to Ms. Taylor's second version of an injury-in-fact. In passing the Clarification Act, Congress recognized that merely including an expiration date on a printed receipt does not materially impact the likelihood that a plaintiff will be a victim of identity theft or financial fraud so long as that receipt is otherwise FACTA-compliant. Therefore, in the judgment of Congress, there is an insufficient link between an expiration-date violation of FACTA and an increased risk of real harm in the form of identity theft (or any need to reduce that risk).

---

[19] The *Spokeo* Court also refers to this type of a concrete injury as "the risk of <u>real</u> harm[.]" 136 S. Ct. at 1549 (emphasis added).

Further, Ms. Taylor's speculation that Fred's "likely" has violated the expiration-date provision throughout the proposed class period by giving her other similarly non-compliant receipts that she subsequently lost or discarded (doc. 34 at 17), does not alter this Court's view about her inability to show an injury-in-fact. Importantly, there is an absence of any factual allegations indicating why the risk of identity theft is imminent or heightened for Ms. Taylor because of any "likely" lost/discarded non-compliant receipts from Fred's containing her card's expiration date. Instead, that link is left to uncertainty and speculation whether measured by the FAC or Ms. Taylor's opposition brief. (*See* Doc. 34 at 21 ("Plaintiff further alleged Defendants provided her with numerous other non-compliant receipts that were either lost of discarded (FAC ¶ 36), which <u>could</u> have been–and <u>may</u> already have been–<u>observed by a non-party and used in furtherance of payment card fraud or identity theft</u>.") (emphasis added)); *cf. Kamal*, 2016 WL 6133827, at *3 (finding allegations about "identity thieves called 'carders' or 'dumpster divers,' who supposedly cob[b]le together credit card numbers from lost or discarded receipts" too "attenuated" to establish standing in light of "*Reilly* and other risk-of-harm cases").

According to her FAC, the only receipt from Fred's that Ms. Taylor knows for certain contained an expiration-date violation she neither lost nor discarded. Further, she alleges no facts from which an imminent risk of material harm in the form of

identity theft could have flowed from that retained receipt despite its non-compliant status.

Additionally, even assuming that Ms. Taylor knew for certain that Fred's violated the expiration-date provision on other occasions and that someone else in her household mistakenly threw away all of those non-compliant receipts, "[i]t is difficult to imagine how the [losing or discarding] of [receipts revealing her card's expiration date information], without more, could work any concrete harm." 136 S. Ct. at 1550. This is particularly true in light of the straightforward legislative reasoning behind the amnesty period created by the Clarification Act–printing expiration dates on otherwise compliant FACTA receipts does not escalate or make more likely the risk of identity theft. *Cf. Llewellyn*, 2017 WL 1437632, at *5 ("[E]ven if Plaintiff had alleged that a third party had viewed a receipt with his expiration date—which he does not—he would not without more have alleged an actual risk of fraud or identity theft.").

Finally, Ms. Taylor's allegations of additional intangible harm in the form of stress over the prospect of card fraud and identity theft and preventative actions taken to monitor her credit do not show an injury-in-fact for her FACTA expiration-date claim. For the same *Reilly*-based reasons discussed in the context of her card-truncation claim, any state-of-mind or monitoring-related injuries are premised upon

a theoretical future harm of identity theft and are too speculatively supported to be imminent.

Therefore, the Court finds that Ms. Taylor has not carried her burden of showing an injury-in-fact with respect to Fred's alleged expiration-date violation of FACTA. Further, in the absence of establishing an injury-in-fact under either FACTA's card-truncation or expiration-date provision, Ms. Taylor's case is due to be dismissed without prejudice for lack of standing.

### B. The Court Does Not Reach the Remaining Issues Raised in Fred's Motion.

Fred's alternatively contends that, even if Ms. Taylor satisfies particularity, concreteness, and imminence, she still lacks standing because she cannot show that her injury is traceable to its alleged conduct. (Doc. 32-1 at 21-22). Fred's also argues that if standing is satisfied, this Court should dismiss Ms. Taylor's FAC for failure to state a claim. (*Id.* at 22-27). Having found the absence of an injury-in-fact for both of Ms. Taylor's FACTA claims due to a lack of concreteness and/or imminence, this Court does not reach those additional issues. Accordingly, the remainder of Fred's Motion is due to be termed as moot.

### IV. Conclusion

Thus, Fred's Motion is due to be granted in part and otherwise termed as moot.

The Court will enter a separate order consistent with this memorandum opinion.

**DONE** this the 2nd day of February, 2018.

**VIRGINIA EMERSON HOPKINS**
United States District Judge